**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

Dated: August 3 2015

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.: 13-32210 |
| | ) | |
| Raul Gomez and | ) | Chapter 7 |
| Evelyn M. Gomez, | ) | |
| | ) | Adv. Pro. No. 14-3013 |
| Debtors. | ) | |
| | ) | Hon. Mary Ann Whipple |
| Raul Gomez, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| Premier Property Management, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF DECISION AND ORDER
DENYING MOTION FOR SUMMARY JUDGMENT**

This adversary proceeding is before the court on Plaintiffs' motion for summary judgment ("Motion") [Doc. # 40] and Defendant's response [Doc. # 41]. Plaintiffs are debtors in the underlying Chapter 7 bankruptcy case. In their complaint, Plaintiffs seek damages that they allegedly sustained as a result of a violation of the automatic stay imposed under 11 U.S.C. § 362.[1] For the reasons that follow,

---

[1] Plaintiffs also allege claims under the Fair Debt Collection Practices Act and 11 U.S.C. § 524 and 727, which claims were previously dismissed pursuant to Fed. R. Bankr. P. 7012 and Fed. R. Civ. P. 12(b)(6). [*See* Doc. # 22].

Plaintiffs' motion will be denied.

## FACTUAL BACKGROUND

From April 2010 until November 2012, Plaintiffs rented a house in Memphis, Tennessee, that was managed by Defendant. [Doc. # 42-3, Raul Gomez Depo., p. 7, 9-10]. Towards the end of their tenancy, Plaintiffs began receiving daily emails from Defendant regarding money that it asserted was owed to it by Plaintiffs, which Plaintiffs disputed. [*Id.* at 8-9]. In November 2012, they moved to Ohio.

On May 23, 2013, Plaintiffs filed a petition for relief under Chapter 7 of the Bankruptcy Code. [Case No. 13-32210, Doc. # 1].[2] On May 30, 2013, notice of Plaintiffs' bankruptcy was sent by the Bankruptcy Noticing Center by first class mail to Premier Property Management at 118 Timber Creek Drive, Cordova, Tennessee. [*Id.*, Doc. # 8, p. 2]. The court has received no return mail as to that mailing or as to any of the other notices in this case that were sent to that address, [*see id.* Doc. ## 33, 45, 46, 48].

There is no dispute that Defendant continued to send automated emails for collection purposes to Evelyn Gomez's email address after Plaintiffs filed their bankruptcy petition. [*See* Doc. # 42-2, Evelyn Gomez Depo., p. 11; Doc. # 42-1, Answers to Request for Admissions Nos. 25 & 31]. According to Evelyn Gomez, she received the emails from Defendant "almost daily" and "sometimes twice a day" for a few months and then once a week for a couple of months. [Doc. # 42-2, p. 11].

According to Evelyn Gomez, after Plaintiffs' bankruptcy petition was filed, in addition to leaving messages on Defendant's "general voicemail," she sent Defendant an email at the email address on its website and "asked [Defendant] to please stop sending these [emails], that they were in error [and] to please contact us." [*Id.* at 10]. Plaintiffs received no reply and contacted their attorney in mid-June 2013. [*Id.* at 10-11]. Plaintiffs met with their attorney, at which time he unsuccessfully attempted to contact Defendant by telephone. [*Id.* at 12]. Plaintiffs' attorney then sent a letter to Defendant in November 2013 demanding payment of $10,000 in damages. [Doc. # 41-1, Gray Aff. ¶ 2; Doc. # 41-2, p. 19]. Notwithstanding the notice of Plaintiffs' bankruptcy filing sent to Defendant by the Bankruptcy Noticing Center, Defendant offers the sworn affidavit of Defendant's director, Nate Gray, who avers that he "performed a search for all communications received regarding the bankruptcy filed by Plaintiffs" and that he "determined that Premier had no actual notice, information or knowledge of the bankruptcy filed by Debtors until it received a letter from their counsel in November 2013." [Doc. 41-1, Gray Aff., ¶2].

---

[2] The court takes judicial notice of the contents of its case docket and the Debtors' schedules. Fed. R. Bankr. P. 9017; Fed. R. Evid. 201(b)(2); *In re Calder*, 907 F.2d 953, 955 n.2 (10th Cir. 1990); *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1171-72 (6th Cir. 1979) (stating that judicial notice is particularly applicable to the court's own records of litigation closely related to the case before it).

There is a dispute as to when Defendant stopped sending the emails. In his affidavit, Gray avers that Defendant stopped sending the auto-generated emails to Plaintiffs "soon after" receiving the November 2013 letter from their attorney. [*Id.* at ¶ 3]. And Plaintiffs offer Defendant's admission that "an instruction of some type was entered into the email generation system in November 2013 or earlier that caused the emails to stop." [Doc. # 42-1, Answer to Request for Admission No. 16]. However, Plaintiffs also offer their deposition testimony that Defendant stopped sending the emails in January 2014. [Doc. # 42-2, p. 13; Doc. # 42-3, p. 12].

Plaintiffs both testified at their depositions that receiving the emails caused them a great deal of stress. The emails were received at all different hours of the day and night, including the early morning hours of 4:00 or 5:00 a.m. [*Id.* at 13; Doc. # 42-3, p. 15-16]. Their son had been deployed to Afghanistan in March 2013, and Evelyn Gomez's email address had been given to the Red Cross for notification in case of an emergency. [Doc. # 42-2, pp. 17, 20]. When she received an email at that address, it would cause her cell phone to ring. [*Id.* at 13]. Although Evelyn Gomez's email address was also used by her family and her attorney, [*Id.* at 21], Plaintiffs testified that when the emails were sent in the early morning hours, they would immediately fear something had happened to their son. [*Id.* at 13; Doc. # 42-3, p. 14]. According to Raul Gomez, fighting over their finances also was causing a lot of stress in their lives at that time. [Doc. # 42-3, p. 14].

According to Evelyn Gomez, she has suffered from anxiety attacks and has been on anti-anxiety medication since she was young. [Doc. # 42-2, p. 15]. However, she testified at her deposition that she had difficulty sleeping and that, due to the stress she was experiencing, her anti-anxiety medication was increased from once a day to three times per day over the "past couple of years" and Ambien was prescribed to help her sleep. [*Id.* at 15-16]. Neither Plaintiff has applied for any loans since filing their bankruptcy petition, is aware of an increase in any insurance premiums as a result of any action taken by Defendant, or has run a credit report since filing. [*Id.* at 19-20; Doc. # 42-3, pp. 20-21]. This adversary proceeding was commenced on December 24, 2014. Plaintiffs have paid no attorney fees and have no fee agreement with counsel in connection with this proceeding. [Doc. # 41-2, p. 20; Doc. # 42-3, p. 19].

## LAW AND ANALYSIS

### I. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ.

3

P. 56(a). In reviewing a motion for summary judgment, however, all inferences "must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-88 (1986). The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, "and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party has met its initial burden, the adverse party "may not rest upon the mere allegations or denials of his pleading but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue for trial exists if the evidence is such that a reasonable factfinder could find in favor of the nonmoving party. *Id*.

**II. 11 U.S.C. § 362**

A statutory automatic stay that is applicable to all entities arises upon the filing of a bankruptcy petition. 11 U.S.C. § 362(a). The scope of the stay is broad and operates to enjoin essentially any act, whether the commencement or continuation thereof, by a creditor to collect on a prepetition debt. *Harchar v. United States (In re Harchar)*, 393 B.R. 160, 167 (Bankr. N.D. Ohio 2008), *aff'd* 694 F.3d 639 (6th Cir. 2012). At issue in this case is subsection 362(a)(6), which provides for a stay of "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a)(6).

To enforce creditor compliance with the automatic stay, the Bankruptcy Code provides that "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k). In order to prevail on a § 362(k) claim, a plaintiff must prove, by a preponderance of the evidence, that the stay imposed under § 362 was violated, that the violation was committed willfully and that plaintiff was injured by the violation. *Grine v. Chambers (In re Grine )*, 439 B.R. 461, 466 (Bankr. N.D. Ohio 2010). A willful violation occurs "when the creditor knew of the stay and violated the stay by an intentional act." *Sharon v. TranSouth Fin. Corp. (In re Sharon)*, 234 B.R. 676, 687 (B.A.P. 6th Cir. 1999). It does not require proof of a specific intent to violate the stay, rather, it requires that the acts which violate the stay be intentional. *Id.*; *Lansdale Family Rest., Inc. v. Weiss Food Serv. (In re Lansdale Family Rest., Inc.)*, 977 F.2d 826, 829 (3d Cir. 1992). Indeed, "where the creditor received actual notice of the automatic stay, courts must presume that the violation was deliberate." *Fleet Mortg. Group, Inc. v. Kaneb*

4

*(In re Kaneb)*, 196 F.3d 265, 269 (1st Cir. 1999).

In this case, there is no dispute that Defendant continued to send emails to Evelyn Gomez's email address for the purpose of collecting a prepetition debt owed to it and, thus, no dispute that the stay was violated. The fact that the emails were auto-generated makes no difference. To avoid violating § 362(a), a creditor is not only required to refrain from certain activity, but may be required to take affirmative action. *See In re O'Neal*, 165 B.R. 859, 862 (Bankr. M.D. Tenn. 1994) (holding that § 362(a)(3) requires a bank to take steps to discontinue an automatic loan payment from a debtor's checking account); *Sharon*, 234 B.R. at 688 (finding that the creditor violated the automatic stay by failing to return the debtor's car that it had repossessed prepetition).

However, a genuine issue of material fact exists as to whether Defendant had notice of Plaintiffs' bankruptcy filing before November 2013 and thus whether Defendant *willfully* violated the stay by continuing to send the emails. While the BNC filed a Certificate of Notice stating that notice of Plaintiffs' bankruptcy filing was sent to Defendant, Gray avers in his affidavit that Defendant had no actual notice, information or knowledge of Plaintiffs' bankruptcy. "[T]he common law has long recognized a presumption that an item properly mailed was received by the addressee." *Bratton v. Yoder Co. (In re Yoder Co.)*, 758 F.2d 1114, 1118 (6th Cir.1985) (citing *Hagner v. United States*, 285 U.S. 427 (1932)). While this presumption "is strengthened when the mail was not returned to the clerk's office," *WebMD Practice Servs., Inc. v. Sedlacek (In re Sedlacek)*, 325 B.R. 202, 215 (Bankr. E.D. Tenn. 2005), it is nevertheless a rebuttable presumption, *Yoder Co.*, 758 F.2d at 1118. Testimony by Gray of non-receipt of a mailing, if believed, may be sufficient to rebut the presumption of receipt. *See id.*

Although oral notice of a filing may be sufficient where it would cause a reasonably prudent person to make further inquiry, *see Meis–Nachtrab v. Griffin (In re Meis–Nachtrab)*, 190 B.R. 302, 307 (Bankr. N.D. Ohio 1995) (finding creditor had knowledge of bankruptcy filing where Debtor telephonically informed him of filing and citing *Constantino v. Flanders Hill Dev. (In re Constantino)*, 80 B.R. 865, 868 (Bankr. N.D. Ohio 1987) (stating that a creditor "can be charged with notice if [it was] in possession of sufficient facts such as would cause a reasonably prudent person to make further inquiry")), Gray's affidavit also creates a dispute as to whether it received notice of Plaintiffs' bankruptcy filing in post-petition emails sent and/or voicemail messages left by Evelyn Gomez. The court also notes that Evelyn Gomez does not specifically state in her deposition what voicemail message she left when she called Defendant. Although she also testified that she sent Defendant emails post-petition, she testified only that she asked Defendant "to please stop sending [the emails], that they were in error [and] to please contact us." [Doc. # 42-2, at 10].

5

She did not testify specifically that she informed Defendant of Plaintiffs' bankruptcy filing. On this evidence, the court cannot charge Defendant with notice of Plaintiff's bankruptcy even if the email and voicemail messages were received by Defendant.

Nevertheless, a willful violation of the stay may have occurred if Defendant continued to send the auto-generated emails to Evelyn Gomez's email address after it admittedly received notice in November 2013. However, as discussed above, whether the emails continued into January 2014 as claimed by Plaintiffs or stopped in November as indicated in Plaintiffs' request for admissions is another material fact in genuine dispute.

Because a genuine issue for trial exists as to whether Defendant willfully violated the automatic stay, the court need not address Plaintiffs' Rule 56 evidence as to damages and Plaintiffs' motion for summary judgment will be denied.

**THEREFORE**, for the foregoing reasons, good cause appearing,

**IT IS ORDERED** that Plaintiffs' motion for summary judgment [Doc. # 40] be, and hereby is, **DENIED.**

###